# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8471 | **DATE** | 5/3/2001 |
| **CASE TITLE** | Commonwealth Ins Co v. Stone Container Corp | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Industrial Risk Insurers' motion (Doc 60-1) to dismiss Count XXIV of the Second Amended Counterclaim is denied. Industrial Risk Insurers is given 7 days to answer the Count XXIV.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | MAY 03 2001 date docketed |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 MAY -3 PM 1:29 | |
| SCT | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

COMMONWEALTH INSURANCE )
COMPANY, et al., )
 )
         Plaintiffs, )
 )
vs. )
 )
STONE CONTAINER CORPORATION, )
 )
         Defendant. )
 )    99 C 8471
 )
STONE CONTAINER CORPORATION, )
 )
         Counterclaim Plaintiff, )
 )
vs. )
 )
NEW YORK MARINE AND GENERAL )
INSURANCE COMPANY, et al., )
 )
         Counterclaim Defendants. )

DOCKETED MAY 0 3 2001

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

    This matter is before the Court on Counterclaim Defendant Industrial Risk Insurers' Rule 12(b)(6) motion to dismiss Count XXIV of the Second Amended Counterclaim. For the reasons set forth below, the motion is denied.



## BACKGROUND

For the purposes of the motion to dismiss, we are obligated to accept as true the well-pleaded allegations of the counterclaim, as follows. Defendant and Counterclaimant Stone Container Corporation ("Stone Container") is a major international pulp and paper company which produces and sells paper, packaging products, and market pulp. On April 13, 1994, a pulp digester located at Stone Container's Panama City, Florida, pulp and paper mill exploded, killing or injuring eight people and causing major structural and equipment damage to the mill and a neighboring building. (Second Amended Counterclaim ("Counterclaim") ¶27.) This lawsuit revolves around the question of who is responsible for covering the more than $84 million in losses Stone Container suffered as a result of the explosion. (Counterclaim ¶29.)

At the time of the explosion, Stone Container was covered by a variety of business and property insurance policies issued by a number of different insurance carriers. Rollins Hudig Hall ("RHH"), acting as Stone Container's insurance broker, structured Stone Container's insurance program for policy year 1994 with coverage for losses up to $10 million and excess coverage for losses up to $20 million to be provided under comprehensive policies which would include both "Boiler and Machinery" coverage and "All Risk" coverage. Losses in excess of $20 million would

-2-

be split, with the "Boiler and Machinery" coverage from $20 million up to $150 million to be provided by one carrier and with "All Risk" coverage from $20 million to $150 million to be provided by a combination of various other carriers, including Counterclaim Defendant Industrial Risk Insurers ("IRI"). (Counterclaim ¶14.)

Prior to the negotiations surrounding Stone Container's 1994 coverage, IRI provided RHH with a "brochure" written "for the benefit of its policyholders" and distributed in an effort to market IRI's All Risk coverage to Stone Container and other operators of pulp and paper mills. (Counterclaim ¶195.) The brochure, entitled "Loss Prevention and Protection for Pulp and Paper Mills," indicated that the greatest risk facing its Pulp and Paper Mill insureds, and the great bulk of IRI's insurance loss experience, was for fire and explosion loss, including fire and explosion loss in pulp digesters. (Counterclaim ¶195.) The Counterclaim alleges that IRI intended for RHH (and through RHH its prospective customers) to rely on the brochure as indicating that IRI's coverage extended to explosions in digesters at pulp and paper mills like Stone Container's Panama City facility. (Counterclaim ¶196).

Stone Container eventually purchased "All Risk Insurance" from IRI with the expectation and understanding that that insurance, in combination with the steam boiler policy it purchased from Hartford Steam Boiler Inspection and Insurance Company, would provide seamless coverage for Stone Container's operations at its Panama City

mill. (Counterclaim ¶¶ 199.) Following the Panama City explosion, however, IRI took the position that Stone Container's losses from the explosion were not covered under its policy. According to the Counterclaim, IRI knew that a "gap" existed between the coverage it was providing and that provided under the Hartford Steam Boiler policy, and it intentionally concealed, suppressed, and failed to disclose the existence of this gap. (Counterclaim ¶¶ 200-01.) Count XXIV alleges that the misrepresentations in IRI's brochure and its material omissions with respect to the gap in coverage constitute a violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2, 505/10a (the "Consumer Fraud Act"). IRI has moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Consumer Fraud Act claim.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint (or counterclaim), not to decide the merits of the case. Triad Associates, Inc. v. Chicago Housing Authority, 892 F.2d 583, 586 (7th Cir. 1989). In ruling on a motion to dismiss, the Court must construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. Bontkowski v. First National Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond

a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Hartford Fire Insurance Co. v. California, 509 U.S. 764 (1993); Sherwin Manor Nursing Center, Inc. v. McAuliffe, 37 F.3d 1216, 1219 (7th Cir. 1994). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. Lucien v. Preiner, 967 F.2d 1166, 1168 (7th Cir. 1992).

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court is limited to the allegations contained in the pleadings themselves. Documents incorporated by reference into the pleadings and documents attached to the pleadings as exhibits are considered part of the pleadings for all purposes. Fed. R. Civ. P. 10(c). In addition, "[d]ocuments that a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993). It is with these principles in mind that we turn to the motion before us.

## DISCUSSION

### I. Section 155 preemption

IRI first contends that Count XXIV is pre-empted by Section 155 of the Illinois Insurance Code. See 215 ILCS 5/155. Section 155 provides:

> Attorney fees. (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonably delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
>
> (a) 25% of the amount which the court or jury finds such party is entitled to recover, exclusive of all costs;
> (b) $25,000;
> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

As the Illinois Supreme Court has noted, "the statute provides an extracontractual remedy for policyholders who have suffered unreasonable and vexatious conduct by insurers with respect to a claim under the policy." Cramer v. Insurance Exchange Agency, 174 Ill.2d 513, 675 N.E.2d 897 (1996). It does not insulate an insurer from tort actions. Id. at 523. Rather, it permits policyholders to recover the specified extracontractual remedies in cases where the insurer misconduct does not rise to the level of a well-established tort. Id. at 526. Thus, "[i]n cases where a plaintiff actually alleges and proves the elements of a separate tort, a plaintiff may bring an independent tort action, such as common law fraud, for insurer misconduct." Id. at 527.

To determine whether a given claim states an independent tort cause of action or whether it alleges merely the bad faith or unreasonable or vexatious conduct addressed by Section 155, we go beyond the legal theory asserted and examine the

conduct forming the basis for the claim. Cramer, 174 Ill.2d at 527. IRI attempts to paint Count XXIV as a classic refusal-to-pay claim which alleges only unreasonable and vexatious conduct – a claim that would only exist under Section 155. See Kush v. American States Ins. Co., 853 F.2d 1380, 1385 (1988) (emotional distress claim based on nothing more than unreasonable delay in failure to pay claim is preempted by § 155). This characterization of Count XXIV is incorrect, however. Stone Container does not allege that IRI issued a policy and then refused to pay a loss covered thereby. It alleges (as an alternative to its contract claims) that IRI knowingly issued a policy that *did not* cover the loss in question while fraudulently representing that the loss *was* covered. As such, Count XXIV does not allege a mere breach of contract or an unreasonable failure to pay a valid claim; it alleges fraudulent inducement to enter into an insurance contract. In our view, such deceptive marketing practices are clearly actionable as independent torts under the rule in Cramer.

The cases IRI cites to the contrary are either outdated or incorrect. Board of Education of the City of Chicago v. Nat'l Union Fire Ins. Co. of Pittsburgh, 1996 WL 22956, at *3 (1996), which held that Section 155 preempts insurance-related claims under the Consumer Fraud Act, was issued ten months before Cramer and is no longer good law. Cf. Cramer, 174 Ill.2d at 522 (discussing disagreement among courts regarding scope of Section 155 preemption); see also Woodard v. American Family Mutual Ins. Co., 950 F. Supp. 1382, 1393 (N.D. Ill. 1997) (pre-Cramer case law in

Seventh Circuit no longer good law) and Manning v. Valor Ins., 1999 WL 183765, at *2 (N.D. Ill. 1999) (same). While Smith v. American General Life and Accident Ins. Co., 1999 WL 965712, *4 (N.D. Ill. 1999), also held that fraud and misrepresentation claims are preempted by Section 155, the opinion fails to mention Cramer, relying instead on a pre-Cramer decision by another federal district court. To the extent that the Smith court did not simply overlook the Cramer decision, we respectfully disagree with its interpretation of the governing rule. Throughout its opinion in Cramer, the Illinois Supreme Court cites fraud as an example of an independent tort action that is *not* preempted by Section 155. See, e.g., 174 Ill.2d at 523 ("*Unlike an action in fraud*, a bad-faith action involves insurer misconduct that is similar to unreasonable and vexatious misconduct."); 174 Ill.2d at 527 ("...a plaintiff may bring an independent tort action, *such as common law fraud*, for insurer misconduct.") (emphasis added). We believe this language clearly contradicts the proposition that fraud claims are preempted by the Insurance Code.[1]

Accordingly, we find that insofar as Stone Container can allege and prove the elements of a fraud claim under the Consumer Fraud Act, Count XXIV is not preempted by Section 155 of the Illinois Insurance Code. We therefore proceed to

---

[1]IRI claims that Cramer applies only to common law torts, and not statutory ones, but it offers no explanation as to why the two should be treated differently for purposes of Section 155 preemption. Nor does the text of Cramer, which refers primarily to "well-established" and "independent" tort actions, suggest any intent on the part of the Illinois Supreme Court to draw the distinction IRI proposes.

analyze IRI's claim that Count XXIV fails to allege all of the essential elements of a claim under the Act.

## II. Failure to allege a "consumer nexus"

As an alternative ground for its motion to dismiss, IRI contends that Count XXIV fails to allege an essential element of a claim under the Consumer Fraud Act – a "consumer nexus." The Act makes unlawful "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact...in the conduct of any trade or commerce...." 815 ILCS 505/2. Most courts agree that a business plaintiff must allege some nexus between the allegedly fraudulent conduct and consumer protection concerns. See J.C. Whitney & Co. v. Renaissance Software Corp., 2000 WL 556610, at *14 (N.D. Ill. 2000), adopted in relevant part, 98 F. Supp. 2d 981 (N. D. Ill. 2000) (citing cases). The precise formulation of this "consumer nexus" is, however, far from clear. Id.

In an effort to harmonize the many conflicting decisions on this issue, this Court in a previous case developed a test for claims by business plaintiffs under the Consumer Fraud Act. In particular, we held that a business plaintiff must allege either that (1) it suffered some harm as a result of conduct that was directed to the market or that otherwise implicates consumer protection concerns; or (2) it was acting as a consumer of the defendant *and* the fraudulent conduct amounted to more than a mere

breach of contract. Zimmerman v. Waste Ltd., II, 1997 WL 159188, at *4 (N.D. Ill. 1997); cf. J.C. Whitney, 2000 WL 556610, at *14, n. 16 (observing that split in authority is more apparent than real, since most courts requiring consumer nexus did not face plaintiff-businesses who were consumers in their own rights). Thus, in Central Diversey M.R.I. Center, Inc. v. Medical Management Sciences, Inc., 952 F. Supp. 575 (1996), this Court dismissed a Consumer Fraud Act claim where the business plaintiff, a consumer of the defendant's debt collection services, alleged that the defendant promised to perform services it never intended to perform. We found this to be essentially a breach-of-contract claim. Id. at 577. Because the plaintiff failed to allege any broad misrepresentation to the public or other consumer nexus, we declared the claim insufficient under the Consumer Fraud Act. Id. at 578. In Zimmerman, on the other hand, the business plaintiff claimed that the defendant overcharged it by pretending to seek reimbursement for governmental fees while concealing the fact that the fees were never in fact imposed. 2000 WL 556610, at *1. We found these allegations to state a traditional fraud claim and, because the plaintiff was a consumer of the defendant's services, deemed them sufficient under the Consumer Fraud Act. Id. at *5.

The case at bar is closer to Zimmerman than to Central Diversey (the parties agree that Stone Container, through its broker RHH, was a consumer of IRI insurance). Count XXIV does not merely attempt to shoehorn a breach of contract claim into a

fraud claim under the Act, as IRI asserts. Counts XX through XXIII allege that the all risk policy Stone Container purchased from IRI covered the type of losses suffered in the Panama City explosion, and that IRI improperly refused to pay claims for these losses. Count XXIV, on the other hand, is expressly brought "in the alternative, without waiver of [Stone Container's] allegations that IRI's insurance coverage extends to the losses incurred by Stone Container as a result of the Panama City Explosion." (Counterclaim ¶192.) Unlike Stone Container's contract claims, Count XXIV assumes that the policy did *not* cover the Panama City explosion and therefore that IRI's refusal to pay the claim did not constitute a breach. (See e.g., Counterclaim ¶199 ("...seamless coverage was in fact not being provided by IRI's All Risk Insurance coverage...").) Rather, Stone Container asserts that IRI fraudulently induced it to purchase the all risk policy by representing that losses like those in Panama City would be covered when in fact they were not. (See e.g., Counterclaim ¶¶196-98.) This is clearly a fraud claim, not a claim for breach of contract.

As a business-consumer bringing a straightforward fraud claim, Stone Container need not allege any additional "consumer nexus" in order to state a claim under the Consumer Fraud Act. See Zimmerman, supra. See also J.C. Whitney & Co. at *17 (corporate fraud plaintiff in role of consumer need not allege special consumer nexus to establish standing under the Consumer Fraud Act); Anchor Mortgage Corp. v. Certified Credit Reporting, Inc., 2000 WL 1700147, at *3 (N.D. Ill. 2000) (same);

Duchossois Industries, Inc. v. Chamberlain Mfg. Co., 2001 WL 59031, at *3-4 (N.D. Ill. 2001) (same); Prime Leasing, Inc. v. CMC Lease, Inc., 1999 WL 1285847, at *4 (N.D. Ill. 1999) (same). Accordingly, IRI's motion to dismiss Count XXIV for failure to allege a consumer nexus is denied.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is denied.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated: May 3, 2001