

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | Sidney I. Schenkier |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8471 | **DATE** | 3/12/2002 |
| **CASE TITLE** | Commonwealth Insurance Company, *et al.* vs. Stone Container Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 4/2/2002 at 9:00 A.M.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** IRI's motion to disqualify Stone's expert Michael Sean Quinn [doc. # 218] is DENIED; IRI's alternative request to limit his testimony is GRANTED in part. Mr. Quinn's testimony is limited as set forth in this opinion. Aon's motion to strike portions of Stone's expert report of Michael Sean Quinn [doc. # 201] is GRANTED in part and DENIED in part, as set forth in this opinion. On or before March 15, 2002, Stone shall serve on the parties in this case a revised report from Mr. Quinn that is modified as directed by this opinion. Mr. Quinn's deposition shall be completed by March 29, 2001. Mr. Quinn's deposition and trial testimony shall be limited consistent with the modifications to his report set forth in this opinion. Status hearing set for 04/02/02 at 9:00 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | MAR 12 2002 | |
| ✓ | Notified counsel by telephone. | date docketed | 224 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | 3/12/2002 date mailed notice | |
| | JJK courtroom deputy's initials | 02 MAR 12 AM 9:57 | JJK7 |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| COMMONWEALTH INSURANCE COMPANY, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | |
| STONE CONTAINER CORPORATION, | ) ) ) | |
| Defendant. | ) ) | No. 99 C 8471 |
| | ) ) | Judge Kocoras |
| STONE CONTAINER CORPORATION, | ) ) | Magistrate Judge Schenkier |
| Counterclaim Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| NEW YORK MARINE AND GENERAL INSURANCE COMPANY, *et al.*, | ) ) ) ) | |
| Counterclaim Defendants. | ) ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Presently before this Court are two motions which represent the second round of disputes arising out of one limited portion of the extensive expert discovery in this case. The first round involved a motion by Stone Container Corporation to disqualify Paul W. Sugarman, a lawyer with Heller Ehrman White & McAuliffe, LLP in Los Angeles, who was retained as a testifying expert by Aon Risk Services of Illinois, Inc. Mr. Sugarman has opined that Stone's insurance coverage litigation strategy — and not Aon's conduct as Stone's insurance broker — caused the losses that Stone

allegedly has suffered. Stone's motion to disqualify Mr. Sugarman was premised on the fact that lawyers in Heller Ehrman's San Francisco office represent Stone in overseas commercial transactions that are completely unrelated to the insurance issues presented in this case. On December 20, 2001, this Court denied Stone's motion to disqualify, finding that Aon's retention of Mr. Sugarman as a testifying expert did not create an attorney-client relationship within the meaning of NORTHERN DISTRICT OF ILLINOIS LOCAL RULES ("LR") 83.51.7 and 83.51.10, and that Mr. Sugarman's work for Aon in this case did not create an appearance of impropriety. *Commonwealth Insurance Co. v. Stone Container Corp.*, 178 F. Supp.2d 938 (N.D. Ill. 2001).

To rebut the opinions offered by Mr. Sugarman, Stone retained its own testifying expert: Michael Sean Quinn, a lawyer with the firm of Bell, Turney, Coogan & Richards, LLP in Austin, Texas. Stone's retention of Mr. Quinn, and the report submitted by Mr. Quinn, has touched off the second round of expert disputes.

Industrial Risk Insurers, Inc. has moved to disqualify Mr. Quinn or, in the alternative, to limit his testimony (doc. # 218). IRI bases its motion on the fact that between 1989 and 1993, while Mr. Quinn was a partner of the law firm of Zelle & Larson (which now operates under the name of Zelle, Hoffman, Voelbel, Mason & Gette, LLP ("Zelle Hoffman"), and which now represents IRI in this lawsuit), Mr. Quinn represented IRI in at least two insurance coverage disputes. In the event that Mr. Quinn is not disqualified, IRI seeks an order precluding Mr. Quinn from "testifying concerning IRI's conduct with respect to the loss at issue" (IRI Mem. at 14). Aon separately has moved to strike limited portions of Mr. Quinn's expert report, on that ground that those portions constitute improper rebuttal (doc. # 201).

After carefully reviewing the briefs submitted by the parties, the Court denies IRI's motion to disqualify; grants in part IRI's alternative request to limit Mr. Quinn's testimony; and grants in part Aon's motion to strike. We address in turn each of these motions, and the reasons for the Court's rulings.

## I.

As the Court previously has written, assessing a motion to disqualify requires the Court to be mindful both of the need to enforce the rules of conduct so as to maintain "public confidence in the propriety of the conduct of those associated with the administration of justice," and to avoid allowing the "drastic measure" of disqualification to be misused. *Commonwealth*, 178 F. Supp.2d at 943 (citations omitted). The party seeking disqualification bears a "heavy burden of proving facts required for disqualification." *Id.* (citations omitted). Thus, we begin with a brief review of the facts relevant to this motion.

As stated above, while a partner at the predecessor of Zelle Hoffman, IRI's lead firm in this case, Mr. Quinn personally represented IRI in two insurance coverage litigation matters between 1989 and 1993. Mr. Quinn's role in those matters was not merely passing or insubstantial. He was the lead partner on one of the matters, and spent some 400 hours on it; and he spent more than 150 hours on the other matter (IRI Mem. at 5-6). However, as we explain below, the evidence submitted suggests that those two matters did not raise the same insurance coverage issues presented in this case. Moreover, it also is clear that Mr. Quinn has engaged in no work for IRI since the end of 1993. While Zelle Hoffman (when it was named Zelle & Larson) began representing IRI in 1994 in connection with the current insurance coverage dispute with Stone, IRI concedes that Mr. Quinn was never involved in that representation (*Id.* at 5). There also is no dispute that Mr. Quinn ended his

affiliation with Zelle & Larson in 1995, and since then has not been affiliated with Zelle & Larson or Zelle Hoffman (*Id.* at 4).

IRI also categorically states that in addition to whatever information Mr. Quinn obtained about IRI's positions in those two litigated matters, by virtue of those representations Mr. Quinn also acquired substantial institutional knowledge of IRI's personnel, organizational structure, policies and procedures, and strategies (IRI Mem. at 7-9). However, the declaration that IRI submits in support of that categorical statement is in fact equivocal, stating only that Mr. Quinn "may" have obtained such information (IRI Mem., Ex. A, at ¶ 17). And, IRI has failed to offer a convincing explanation of how any institutional knowledge that Mr. Quinn may have obtained (and that he may still remember, more than eight years after last representing IRI) might be used by Mr. Quinn to IRI's detriment here.

In addition, whatever knowledge Mr. Quinn may have of IRI, there is no dispute that Mr. Quinn's opinions are not being offered to advance Stone's claims against IRI, but rather to advance its claims against Aon. The Court believes that this undermines IRI's contention that there exists a "clear" and "definite" danger that Mr. Quinn (and Stone) will use any such knowledge to IRI's disadvantage (IRI Mem. at 7, 8). Stone's claims against Aon, which was Stone's insurance broker, are posed in the alternative to the claims it asserts against IRI and the other insurers. Stone claims that IRI and the other insurers are obligated to cover the losses at issue in this lawsuit. Stone's claims against Aon come into play only if their coverage claims against IRI and the other insurers fail: Stone asserts that if there is no coverage, then it was because as the broker Aon breached its contract with Stone, was negligent, and/or breached its fiduciary duty to Stone (doc. # 154: Stone's Fourth Am. Counterclaim, Counts 25-27). This is significant to the present motion because it

4

underscores that Mr. Quinn's opinions about Aon are not adverse to IRI's interests in this litigation.[1]

On these facts, we do not believe that IRI has demonstrated that it is entitled to the drastic remedy of disqualification. In so holding, we begin with the proposition – for the reasons explained in the Court's earlier opinion, *Commonwealth*, 178 F. Supp.2d at 943-45 – that Mr. Quinn's engagement by Stone solely as a testifying expert does not create an attorney-client relationship. IRI nonetheless argues that LR 83.51.6(a), 83.51.7, and 83.51.9(c) require disqualification. We disagree.

### A.

We begin with LR 83.51.6(a) and 83.51.9(c) (hereinafter referred to as Rules 1.6 and 1.9). Rule 1.6(a), entitled "Confidentiality of Information," states that, with limited exceptions, "a lawyer shall not, during or after termination of the professional relationship with the client, use or reveal a confidence or secret of the client knows to the lawyer unless the client consents after consultation." Rule 1.9(c), entitled "Conflict of Interest: Former Client," states that a "lawyer who has formerly represented a client in a matter or whose present or former law firm has formerly represented a client in a matter shall not thereafter: (1) use information relating to the representation to the disadvantage of the client . . . ; or (2) reveal information relating to the representation . . ." These rules both address the same concern – that a lawyer preserve the confidential information that was entrusted to him or her by the client. Significantly, the plain language of Rules 1.6(a) and 1.9(c) does not prohibit an attorney from undertaking an attorney-client representation (much less an expert engagement such as that involved here) that is adverse to the interests of the former client.

---

[1] For these reasons, we find unconvincing IRI's argument that Mr. Quinn might offer adverse testimony against IRI because Stone and Aon have a "mutual interest . . . in eliciting testimony which is adverse to IRI's interests" (IRI Reply at 5).

5

IRI argues that there is nothing in the language of Rule 1.9 or the accompanying commentary "which states or suggests that violations of Rules 1.9(a) and (b) provide a basis for disqualification while violations of Rule 1.9(c) do not" (IRI Reply at 6). But, that argument ignores that the plain language of Rules 1.9(a) and (b) specifically prohibit a lawyer from undertaking an attorney-client representation in certain instances, whereas the language of Rule 1.9(c) does not. We see no reason to ignore this distinction in the text of those rules, or to assume that the drafters inadvertently omitted from Rule 1.9(c) a prohibition that they intended to include. Indeed, as IRI itself concedes (IRI Reply at 5 n.5), Rules 1.9(a) and (b) are "simply different" from Rule 1.9(c).[2] And, there is case law from this district specifically holding that Rule 1.9(c) does not create an independent basis for disqualification. *Senese v. Chicago Area I.B. of T. Pension Fund*, 1997 U.S. Dist. LEXIS 19513, at 5 (N.D. Ill. 1997) (*cited in* Stone Resp. to IRI Mot. at 5). IRI cites but does not address that decision, and offers no authority contrary to it. Thus, to the extent that IRI seeks to selectively import the elements of Rules 1.9(a) and (b) into Rule 1.9(c) (*see, e.g.*, IRI Reply at 7), the Court rejects IRI's attempt to do so.[3]

---

[2] For this reason, we agree with IRI that unlike Rules 1.9(a) and (b), Rule 1.9(c) does not require a showing that the subsequent representation is the "same or a substantially related matter" to that involved in the former representation (IRI Reply at 5 and n.5). However, that point is of no great assistance to IRI here. Rule 1.9(c) does not address the situation of a subsequent attorney-client representation, but more broadly deals with the limitations on the ability of an attorney to use or reveal information relating to the representation of the former client. Rules 1.9(a) and (b), on the other hand, both directly address the question of subsequent attorney-client relationships. Those rules state that absent consent of the former client, a lawyer may not undertake a subsequent representation that is materially adverse to the interests of the former client (Rules 1.9(a) and (b)), or in circumstances where protected information obtained by the lawyer in the former representation is material to the subsequent representation (Rule 1.9(b)). We need not dwell on the parameters of Rules 1.9(a) and (b), because "IRI does not contend that disqualification of Quinn should be based upon Rules 1.9(a) or 1.9(b)" (IRI Mem. at 10 n.6).

[3] IRI's citation to *Havens v. State of Indiana*, 793 F.2d 143 (7th Cir. 1986) (IRI Mem. at 11) fails to advance its position on this motion, since that case addressed Rule 1.9(a) and not Rule 1.9(c).

6

Moreover, the linchpin to IRI's argument under Rule 1.9(c) is that disqualification would be appropriate if Mr. Quinn had violated the restrictions imposed by that rule. Yet, all of IRI's arguments are about what protected information IRI fears that Mr. Quinn "may" (or is "likely") to disclose – not about any violation that has in fact occurred. Thus, even if a violation of Rule 1.9(c) would mandate disqualification, IRI has not alleged, much less demonstrated, that Mr. Quinn has used or revealed protected information in violation of Rule 1.9(c).

**B.**

As for IRI's reliance on Rule 1.7, we note here – as we did on the motion to disqualify Mr. Sugarman – that the question of disqualification in this unusual setting is a matter of "proximity and degree," based on a consideration of factors such as "the duration and intimacy of the lawyer's relationship with the client . . . , the functions being performed by the lawyer, and the likelihood that actual conflict will arise and the likely prejudice to the client from the conflict if it does arise." *Commonwealth*, 178 F. Supp.2d at 948. Based on its consideration of those factors, the Court must determine "whether there is potential for adverse effect." *Id.* For the following reasons, we do not find a significant potential for such an adverse effect here.[4]

*First,* the facts submitted indicate that Mr. Quinn's representation of IRI involved at least two matters, to which he devoted more than 550 hours over a period of nearly five years. Thus, the representation was not merely passing or fleeting. At the same time, Mr. Quinn's work for IRI is not ongoing and, in fact, terminated more than eight years ago. The Court does not believe that by working on two discrete cases during a five-year period that ended long ago, and spending about 110

---

[4] Because we do not believe that Mr. Quinn's engagement for Stone is likely to result in the use or disclosure of protected information he learned through representing IRI, we do not agree with IRI's contention (IRI Mem. at 13) that disqualification is required under common law principles.

7

hours per year on average on those matters (which is likely to be significantly less than 10 percent of the time that Mr. Quinn devoted to all client matters), Mr. Quinn developed so intimate a relationship with IRI that he became the functional equivalent of IRI's "outside general counsel."

*Second*, Mr. Quinn's prior representation of IRI involved insurance coverage matters, as does this lawsuit. The Court would expect that as a result of that representation, Mr. Quinn acquired some "institutional knowledge" of IRI's insurance business. On the other hand, Stone makes a persuasive case that the two litigation matters on which Mr. Quinn worked for IRI did not appear to involve "an explosion or rupture of a pressure vessel, or even to implicate the kind of standard policy provisions potentially at issue" in this case. As Stone points out, IRI did not identify the litigation matters handled by Mr. Quinn in response to discovery requests seeking other claims against IRI involving explosions or ruptures of pressure vessels (Stone Resp. to IRI Mot. at 4-5 and n.1). IRI offers no answer to this point which, in the Court's view, weighs against disqualification.[5]

*Third*, we believe that the likelihood of any actual use or disclosure of protected information is small. In reaching this conclusion, the Court gives weight to the fact that (1) this lawsuit does not appear to involve the same issues as presented in the two lawsuits on which Mr. Quinn represented IRI; (2) Mr. Quinn has not worked on matters for IRI for more than eight years, which decreases the likelihood that he will have detailed recollections of IRI's confidential information; (3) Mr. Quinn is engaged solely as a testifying expert to support Stone's claims against Aon, and is not adverse to IRI in this lawsuit; and (4) Mr. Quinn's role as a testifying expert to support Stone's coverage

---

[5]IRI argues that even if this point showed that this case is not substantially related to Mr. Quinn's prior representations of IRI, that would not matter for purposes of application of Rule 1.9(c) (IRI Reply at 5 n.5). As stated above, the Court agrees with IRI on that point. But, the Court finds that the "substantial relatedness" of Mr. Quinn's prior representation of IRI to the issues raised in this case, *vel non*, is relevant to the analysis under Rule 1.7. IRI has offered no argument or authority to suggest otherwise.

8

litigation strategy, and to respond to Aon's expert, is unlikely to implicate whatever confidential information that Mr. Quinn may still recall. In reaching this latter conclusion, the Court has considered IRI's concerns about how Mr. Quinn might be induced to reveal IRI's protected information (IRI Reply at 3-5), but does not consider them sufficient to warrant the drastic remedy of disqualification.[6]

## C.

Having concluded that the "drastic measure" of disqualification is not warranted here, we turn to IRI's alternative request for an order limiting certain aspects of Mr. Quinn's testimony. IRI states that such an order is required to ensure that Mr. Quinn does not use or reveal protected information (IRI Mem. at 13-14; IRI Reply at 8-9). The Court agrees with Stone's observation (Stone Resp. to IRI Mot. at 7) that a court normally would not issue an order that, in essence, directs witnesses or parties to follow rules that they have an independent obligation to follow – and everyone here agrees that Mr. Quinn is obliged to keep secret the protected information he acquired in representing IRI.

---

[6]IRI has articulated four alleged concerns. *First*, IRI states that when examined about his qualifications, Mr. Quinn "may be questioned in detail concerning matters related to IRI" (IRI Reply at 3). If so, we fail to see how testifying about his experience and background – which Mr. Quinn likely would be asked to do if retained as an expert in any case – implicates special risks or concerns to IRI here. *Second*, IRI states that in questioning about the policies in this case, Mr. Quinn may disclose protected information about "IRI's interpretation of the meaning of the term 'rupture' or industry controversies or disputes concerning the meaning of this term" (*Id.* at 4). But, as explained above, the evidence indicates that Mr. Quinn's prior work for IRI did not involve those matters, rendering it unlikely that he would have protected knowledge obtained from IRI on those matters that he would be in a position to divulge even if asked. *Third*, IRI asserts that because Mr. Quinn reviewed various documents produced by IRI in this case in the course of preparing his report, he can be questioned about those documents and thus might answer questions about them based on protected information he gained from representing IRI (*Id.* at 4). However, a focus of Mr. Quinn's opinions is what animated Stone's litigation conduct, not how IRI interpreted its policies. Thus, any testimony that Mr. Quinn might offer would be unlikely to draw on any protected knowledge he might possess concerning's IRI's interpretation of its policies. *Fourth*, IRI expresses the fear that Aon or Stone may seek to elicit testimony from Mr. Quinn to advance Stone's "wide-ranging allegations of bad faith against IRI" (IRI Reply at 4-5). However, the Court fails to see how such questions properly would even be asked, as they do not fall within the scope of Mr. Quinn's opinions rebutting Mr. Sugarman's criticisms of Stone's litigation conduct.

9

But, the Court does not consider this a normal situation. The engagement by Stone of Mr. Quinn, formerly a lawyer for IRI in insurance coverage matters, to offer opinions in an insurance coverage case in which Stone and IRI are adverse parties, is not the type of occurrence that can be called common place. For the reasons stated above, the Court finds that this situation does not require disqualification. Yet, the situation does make one wonder (with apologies to Humphrey Bogart) why, of all the lawyers in all the law firms in all the United States, Stone had to choose a lawyer who formerly worked for IRI.[7] We have no doubt that Mr. Quinn is a capable attorney; we also have no doubt that there are many other capable attorneys who never worked on IRI matters, and who also could speak to the matter on which Mr. Quinn was engaged by Stone. In these circumstances, we think it appropriate to provide some guidance with respect to Mr. Quinn's testimony.

Accordingly, we will grant in part IRI's alternative request to limit Mr. Quinn's testimony. The Court orders that Mr. Quinn refrain from disclosing or using in his testimony any protected information (within the meaning of Rules 1.6 and 1.9(c)) that he acquired through his representation of IRI or his work at Zelle & Larson. We believe that in light of the foregoing discussion in this opinion and the limited scope of Mr. Quinn's opinions, this direction renders unnecessary the other specific limitations that IRI proposes.

## II.

The Court now turns to Aon's motion to strike certain opinions from Mr. Quinn's report that Aon claims constitute improper rebuttal. *First*, Aon seeks to strike Mr. Quinn's opinion that

---

[7]The famous line delivered by Humphrey Bogart as Rick Blaine in the movie *Casablanca* is as follows: "Of all the gin joints in all the towns in all the world, she walks into mine." *See* http://us.imdb.com.

10

"Sugarman ignores the fact that Stone's SLS ("seriatim litigation strategy") was driven in large measure by RHH's failure to procure joint loss agreements that could clearly be invoked against all insurers. In the absence of such agreements, Stone Container was left to the expedient of entering into an agreement with the London insurers that required that it pursue the SLS" (Quinn Report at 9). *Second*, Aon seeks to strike Mr. Quinn's opinion that RHH failed "to advise Stone of industry controversies and disputes regarding the meaning of such terms as 'rupture,' and the status of digesters"; "to review the policies for seamlessness, after having been asked to procure seamless coverage and after having asked the industry for it"; "to make sure that all policies had identical joint loss agreements"; "to advise Stone of its possible need for DIC coverage"; and undermined "Stone's search for coverage by suggesting that Stone could have had coverage if only it had pursued a more rational strategy" (*Id.* at 10). Aon argues that all of these statements express broker liability opinions, which Stone was obliged to disclose by September 14, 2001; that Stone in fact disclosed a broker liability expert, Phil Gallagher, who has been deposed; and that the above-referenced opinions by Mr. Quinn are not rebuttal to Mr. Sugarman's opinions but rather an untimely attempt to bolster or supplement Mr. Gallagher's opinions (Aon Mem. at 1-3; Aon Reply at 1-2).

Not surprisingly, Stone asserts that these opinions all are relevant to rebutting Mr. Sugarman's criticisms of Stone's coverage litigation strategy. Stone explains that the portions of Mr. Quinn's report under attack in this motion all relate to Mr. Quinn's core opinions (1) that "the litigation strategy decisions that Mr. Sugarman criticizes were in fact driven by Aon's own failures to place Stone Container in a more advantageous position," or (2) that assuming Mr. Sugarman's theory, the very fact of Aon offering Mr. Sugarman's opinions "will itself negatively influence the

11

underlying coverage case, in further violation of Aon's duties to Stone Container" (Stone Resp. to Aon Mot. at 3).

As a preliminary matter, we note that Stone does not dispute that the portions of the Quinn report challenged by Aon are cumulative to the opinions offered by Mr. Gallagher, who is Stone's expert on the question of broker liability. Thus, while no party has provided the Court with a copy of Mr. Gallagher's report so that the Court could make its own assessment, we will accept as conceded the point that the challenged portions of the Quinn report are cumulative to Mr. Gallagher's opinion. That, alone, would not warrant striking these portions of the Quinn report. While it is generally the practice in this district to prohibit a party from offering multiple experts to express the same opinions on a subject, there is no general practice or rule that prohibits a party from identifying under Fed. R. Civ. P. 26(a)(2) more than one testifying expert on a subject and reserving for later the decision as to which one to use at trial.

However, there is an order in this case that required Stone to identify any testifying experts it would offer on the question of Aon's broker liability by September 14, 2001. To the extent that Mr. Quinn seeks to offer independent opinions on the question of broker liability, his report – dated January 25, 2002 – was more than four months late.
Stone has offered no explanation for any late addition of a new expert to opine on broker liability, and we cannot think of any satisfactory one.

Furthermore, we agree that, contrary to Stone's assertion (Stone Resp. to Aon Mot. at 3), allowing Stone to have a new expert opine on broker liability would cause prejudice to Aon. Pursuant to the schedule set by the Court, both Mr. Gallagher and Aon's responsive expert on broker liability have been deposed. Stone thus has had the benefit of reviewing all of the reports, and

assessing the depositions of the experts, on broker liability. It would give Stone an unfair tactical advantage to allow it now to offer a new expert (Mr. Quinn) to offer broker liability opinions already expressed by Mr. Gallagher: perhaps to express those opinions in a way designed to reinforce Mr. Gallagher's opinions, or to avoid criticisms of how Mr. Gallagher expressed them. Thus, the Court agrees that Mr. Quinn may not independently express opinions that Aon breached obligations to Stone so as to create broker liability.

That said, the Court does not agree with Aon as to the excisions from the Quinn report that are necessary. Stone is not entitled to have Mr. Quinn weigh in by expressing his independent opinion that Aon's conduct breached obligations to Stone; but, Stone is entitled to have Mr. Quinn explain why Stone's coverage litigation strategy was reasonable in light of the position into which it was placed by Aon's conduct as a broker. We believe that the challenged opinions by Mr. Quinn do address this latter, permissible point. At the same time, perhaps because "inartfully drawn" (Stone Resp. to Aon Mot. at 2), the opinions do so in a way that could be read as suggesting that Aon breached its duties to Stone – a point that is for Mr. Gallagher, not Mr. Quinn.

The Court believes that the permissible scope of Mr. Quinn's opinions (and prospective testimony) may be preserved by a few minor amendments to his report. As Aon concedes, it would be entirely proper rebuttal for Mr. Quinn to opine that a "coverage maximizing" strategy (as opposed to the seriatim litigation strategy Stone pursued) "would not have worked for Stone here, due to the structure of Stone's 1994 insurance program" (Aon Reply at 3). In substance, that is what most of the challenged opinions say – albeit in language that could be read as suggesting that Mr. Quinn independently has opined that "the structure of Stone's 1994 insurance program" was the result of Aon's breach of its obligations. In order to eliminate that latter suggestion (which is within Mr.

13

Gallagher's province, not Mr. Quinn's), the Court orders that the Quinn report be modified as follows: (1) at page 9, the first sentence of the fourth full paragraph is to be modified to state that Stone's litigation strategy was driven in large measure by "the absence of" joint loss agreements, and to eliminate the reference to "RHH's failure to procure them"; (2) at page 10, the first four bullet points in the first full paragraph are to modified to state what matters were not brought to Stone's attention or what characteristics the policies lacked, and to eliminate the references to "RHH's failure" to advise, review or make sure that Stone received certain information or that the policies contained certain characteristics; and (3) at page 10, the fifth bullet point of the first full paragraph and the second sentence of the second full paragraph are to be deleted.[8]

The Court believes these changes will strike a proper balance by allowing Stone to use Mr. Quinn to rebut Mr. Sugarman's opinions, as is permissible, without treading into untimely and cumulative opinions on broker liability. Moreover, these revisions will not cause Stone any prejudice: to the extent Stone wishes to argue that Aon breached a duty by failing to provide Stone with certain information or by failing to see to it that the policies had certain characteristics, presumably Stone will have Mr. Gallagher express and explain those opinions.

---

[8] By this last modification we do not foreclose Mr. Quinn from expressing the opinion that under Mr. Sugarman's analysis, the very fact that Aon offers Mr. Sugarman's opinion would decrease Stone's chances of prevailing against the insurers, which is proper rebuttal insofar as Mr. Quinn opines that this suggests a defect in Mr. Sugarman's theory. Whether that opinion is persuasive or instead, as Aon alleges, flawed (Aon Reply at 4) is not for the Court to decide at this time – just as it is not for the Court to decide at this time whether, as Stone argues (Stone Resp. To Aon Mot. at 2), Stone's coverage litigation decisions are irrelevant to the liability questions in this case. What this modification will do is prevent Mr. Quinn from offering the independent opinion that Aon's conduct in offering Mr. Sugarman's opinion would breach its duty to Stone, which is a broker liability opinion that is within Mr. Gallagher's province but that is outside proper rebuttal.

## CONCLUSION

For the reasons set forth above:

(1) IRI's

to disqualify Stone's expert Michael Sean Quinn (doc. # 218) is DENIED; IRI's alternative request to limit his testimony is GRANTED in part. Mr. Quinn's testimony is limited as set forth in this opinion.

(2) Aon's motion to strike portions of Stone's expert report of Michael Sean Quinn (doc. # 201) is GRANTED in part and DENIED in part, as set forth in this opinion. On or before March 18, 2002, Stone shall serve on the parties in this case a revised report from Mr. Quinn that is modified as directed by this opinion. Mr. Quinn's deposition shall be completed by March 29, 2001. Mr. Quinn's deposition and trial testimony shall be limited consistent with the modifications to his report set forth in this opinion.

The matter is set for a status conference on April 2, 2002 at 9:00 a.m.

**ENTER:**

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

DATED: March 12, 2002

15