# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8471 | **DATE** | 12/13/2002 |
| **CASE TITLE** | Commonwealth Ins Co vs. Stone Container | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** We grant IRI's motion (Doc 294-1) for summary judgment. All other pending motions are denied. Joint pretrial order to be filed on or before January 31, 2003.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

SCT — courtroom deputy's initials

9
number of notices

DEC 1 6 2002
date docketed

docketing deputy initials

12/13/2002
date mailed notice

SCT
mailing deputy initials

U.S. DISTRICT COURT
CLERK

02 DEC 13 PM 3: 26

Date/time received in central Clerk's Office

Document Number

418

COMMONWEALTH INSURANCE COMPANY,       )
HARTFORD FIRE INSURANCE COMPANY,      )
NAVIGATORS INSURANCE COMPANY, EMPLOYERS )
INSURANCE OF WAUSAU, and NEW YORK MARINE & )
GENERAL INSURANCE COMPANY,            )
                                      )
                    Plaintiffs,       )
        vs.                           )          99 C 8471
                                      )
STONE CONTAINER CORPORATION,          )
                                      )
                    Defendant.        )
======================================)
STONE CONTAINER CORPORATION,          )
                                      )
                    Counterclaimant,  )
        vs.                           )
                                      )
COMMONWEALTH INSURANCE COMPANY,       )
HARTFORD FIRE INSURANCE COMPANY,      )
NAVIGATORS INSURANCE COMPANY, EMPLOYERS )
INSURANCE OF WAUSAU, NEW YORK MARINE & )
GENERAL INSURANCE COMPANY, INDUSTRIAL RISK )
INSURERS, ROLLINS HUDIG HALL OF ILLINOIS, INC., )
AON RISK SERVICES INC. OF ILLINOIS, and AON RISK )
SERVICES, INC., U.S.A.,               )
                                      )
                    Counterdefendants. )

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, Chief District Judge:

   This matter comes before the court on no less than eighteen motions.

Defendant/Counterclaim-Plaintiff Stone Container Corporation ("Stone") moves for

summary judgment against Plaintiff/Counterclaim-Defendant Commonwealth Insurance Company ("Commonwealth") and against Third-Party Defendant Industrial Risk Insurers ("IRI"). Additionally, Stone moves for judgment on the pleadings or, alternatively, summary judgment against Plaintiffs/Counterclaim-Defendants New York Marine and General Insurance Company ("NY Marine"), Employers Insurance of Wausau ("Wausau"), Navigators Insurance Company ("Navigators"), and Hartford Fire Insurance Company ("Hartford Fire"). Commonwealth, NY Marine, Wausau, Navigators, and Hartford Fire (collectively, the "All-Risk Insurers") and IRI move for summary judgment against Stone. Additionally, IRI moves to strike certain Stone papers submitted with respect to several of the pending motions. For the reasons set forth below, we grant IRI's motion for summary judgment and deny all other outstanding motions.

## BACKGROUND

Stone manufactures pulp, paper, and paper products. It makes pulp in pulp digesters, which turn wood chips into pulp in the presence of chemicals, heat, and pressure. One of Stone's paper-making plants is located in Panama City, Florida. On April 13, 1994, a pulp digester (Pulp Digester #15) at Stone's Panama City plant exploded, killing several employees and causing an alleged $84 million in damages to the facility. In the instant action, Stone seeks reimbursement for its damages from the

All-Risk Insurers and IRI. The All-Risk Insurers and IRI resist payment, maintaining that the damages sustained are excluded under the relevant policies.

Stone obtained insurance for the calendar year 1994 with the aid of a professional corporate insurance broker, Rollins Hudig Hall of Illinois, Inc. ("RHH") (now AoN Risk Services, Inc. of Illinois ("AoN")). Stone ultimately obtained a patchwork of insurance coverage for the 1994 year that was split among different insurers, at different layers of coverage, and between different types of insurance. For the first $20 million of damage, Stone was covered for all risks including boiler and machinery risks. Stone has received the full proceeds under these policies. For damages in excess of $20 million, coverage was split between boiler and machinery insurance provided by Hartford Steam Boiler Inspection and Insurance Company ("HSB") and all-risk insurance, excluding boiler and machinery risks, provided by several insurers including the All-Risk Insurers and IRI.

In February 1995 the All-Risk Insurers filed the first of the suits regarding the issues of this case: an action seeking a declaratory judgment that their policies did not cover Stone's losses incurred at the Panama City plant. This suit was dismissed without prejudice so Stone could pursue an action solely against HSB (the boiler and machinery insurer for damages in excess of $20 million). Stone obtained summary judgment against HSB at the trial level but lost on a reversal by the Court of Appeals.

*Stone Container Corp. v. Hartford Steam Boiler Inspection and Ins.*, 165 F.3d 1157 (7th Cir. 1999) *rev'g Stone Container Corp. v. Hartford Steam Boiler Inspection and Ins.*, 936 F. Supp. 487 (N.D. Ill. 1996).

In the face of the 1999 determination that HSB's policy did not cover the Panama City loss, the All-Risk Insurers filed anew their declaratory judgment action against Stone. Stone filed counterclaims against the All-Risk Insurers and third-party claims against IRI.

## DISCUSSION

This is a diversity action arising under state law. The law of Illinois governs the substantive issues of this case. *See* April 2, 2002, Order (applying Illinois state law).

## I. Judgment on the Pleadings

After the close of pleadings, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). The appropriate standard for a judgment on the pleadings is "that applicable to summary judgment, except that the court may consider only the contents of the pleadings." *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993). Thus, judgment on the pleadings is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.*

Stone moves for judgment on the pleadings against NY Marine, Wausau, Navigators, and Hartford Fire. Stone bases these motions solely on two incorrect and

- 4 -

one insufficient reason: 1) the non-movants admitted in their pleadings that their policies excluded only those risks that were covered by the HSB boiler and machinery policy; 2) the Seventh Circuit held that the Panama City digester that exploded was neither a "boiler" nor "machinery," and that, consequently, the Panama City loss was not covered by the HSB policy; and 3) the wear and tear exclusion under the non-movants' policies does not apply.

With respect to the first reason, Stone incorrectly claims that NY Marine, Wausau, Navigators, and Hartford Fire admitted in their pleadings (by failing to substantively answer) that their policies "excluded only those risks covered by the Hartford Steam Boiler Policy." Whether or not NY Marine's, Wausau's, Navigators', and Hartford Fire's policies exclude only those risks covered by the HSB boiler and machinery policy are questions of law. *See Konami (America) Inc. v. Hartford Ins. Co. of Illinois*, 761 N.E.2d 1277, 1281 (Ill. App. Ct. 2002) ("The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court . . ."). A party cannot admit something that is a question of law.

With respect to the second reason, Stone misrepresents the holding of the Seventh Circuit in *Hartford II*, 165 F.3d 1157. The court did not hold that the exploded digester was "neither a "boiler" nor "machinery" as Stone repeatedly states

in its briefs as the reason for denying coverage under the HSB policy. In *Hartford II*, the court held that the Panama City loss was not covered under the HSB policy because it was excluded by an explosion exclusion and because no exception to that exclusion applied. 165 F.3d at 1161. In determining that the exception to the explosion exclusion did not apply, the court held that the digester was not a steam boiler, electric steam generator, steam piping, steam turbine, steam engine, gas turbine, or moving machinery. It further held that the digester was not "of a kind" of one of these seven objects. *Id* at 1160-61. The court, however, never held that the digester was not *non-moving* machinery. In fact, had the court determined that the digester was not an insured "object" under the HSB policy in the first place, it would not have had to resort to that policy's explosion exclusion to deny coverage.

With respect to the third reason, the wear and tear exclusion is only a backup position of NY Marine, Wausau, Navigators, and Hartford Fire. Because the pleadings fail to show as a matter of law that NY Marine, Wausau, Navigators, and Hartford Fire lose with respect to the boiler and machinery exclusion, judgment on the pleadings is precluded regardless of whether or not the wear and tear exclusion applies. Moreover, as explained below, the wear and tear exclusion does not apply.

- 6 -

## II.  Summary Judgment

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).  The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The burden then shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the non-movant bears the burden of proof at trial. *Id.*  The non-movant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. *Id.*  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### A.  Stone Versus New York Marine

NY Marine resists coverage for the Panama City loss under two exclusions, a boiler and machinery exclusion and a wear and tear exclusion.  The boiler and machinery exclusion states:

> It is hereby understood and agreed that this Policy does not insure direct physical loss or damage as defined in the Policy issued to the Assured by the Hartford Steam Boiler Insurance Company.

NY Marine Memo. at 8; Stone Opp. at 6. The "Policy issued to the Assured by the Hartford Steam Boiler and Machinery Insurance Company" is the same HSB policy that the Seventh Circuit interpreted in *Hartford II*. 165 F.3d 1157.

Since the NY Marine policy excludes coverage for direct physical loss or damage as defined in the HSB policy, an analysis of the HSB policy is necessary. In section "A. COVERAGE", the HSB policy provides: "[HSB] will pay for direct damage to Covered Property caused by a Covered Cause of Loss." The HSB policy defines Covered Property as to include all property owned or controlled by Stone–this clearly includes Pulp Digester #15 and the Panama City plant. It defines Covered Cause of Loss as "an 'accident' to an 'object'". Object is further defined to explicitly include unfired pressure vessels (e.g., "'Object' means any: . . . unfired vessel normally subject to vacuum or internal pressure"). The HSB policy also defines 'accident':

> 'Accident' means a sudden and accidental breakdown of the 'object' or a part of the 'object.' At the time the breakdown occurs, it must manifest itself by physical damage to the 'object' that necessitates repair or replacement.

Clearly, the Panama City loss is defined within section "A. COVERAGE" of the HSB policy. The HSB policy, however, also includes section "B. EXCLUSIONS", in which some portions of coverage, otherwise granted under section "A. COVERAGE", are

read out of the HSB policy. Section "B. EXCLUSIONS" includes an exclusion for losses caused by explosions. The parties should already be familiar with this interpretation of the HSB policy as it is not new. The combined opinions of *Hartford I* and *Hartford II* lay out this exact same interpretation. 936 F. Supp. 487; 165 F.3d 1157. In *Hartford I*, the court held that the Panama City loss was an insured loss under the HSB policy. 936 F. Supp. 487. In reaching that conclusion, the court first found that the loss was defined within section "A. COVERAGE" of the policy. *Hartford I*, 936 F. Supp. at 492. The court next held that the explosion exclusion of section "B. EXCLUSIONS" did not preclude coverage because an exception to the explosion exclusion applied. *Hartford I*, 936 F. Supp at 504. In *Hartford II*, the court reversed *Hartford I*, holding that the Panama City loss was an excluded loss under the HSB policy. 165 F.3d at 1162. The *Hartford II* court based its reversal on *one* thing: the exception to the explosion exclusion did not apply. 165 F.3d at 1161. The court in *Hartford II* did not hold that the Panama City loss was not "direct physical loss or damage as defined in the [HSB policy.]" Such is the issue before us today.

NY Marine contends that "as defined in the [HSB policy]" means as defined in the basic definition of coverage set forth in section "A. COVERAGE" (i.e. "an accident to an object") without regard to any exclusions that may thereafter carve certain portions of coverage out of that basic definition. Stone contends that "as defined in the

[HSB policy]" means *as covered* in the HSB policy. Under NY Marine's interpretation, the Panama City loss is not covered under the NY Marine policy because it was "an accident to an object" as defined in section "A. COVERAGE" of the HSB policy. Under Stone's interpretation, the Panama City loss is covered under the NY Marine policy because section "B. EXCLUSIONS" narrows the otherwise broad definition of "an accident to an object" by removing coverage for losses caused by explosions. Because we find the exclusion susceptible to both parties' interpretations, it is ambiguous. *See City of Northlake v. Illinois Fraternal Order of Police Labor Council, Lodge 18*, 775 N.E.2d 1013, 1021, (Ill. App. Ct. 2002) (a contract susceptible to more than one meaning is ambiguous); *see also Houben v. Telular Corp.*, 231 F.3d 1066, 1072 (7th Cir. 2000) ("the question whether contractual terms are ambiguous or not is a question of law for the court to decide."). Since the exclusion is ambiguous, "the proper construction of the [exclusion]'s terms--that which accords with the intent of the parties--is a question of fact, and we may turn to extrinsic evidence to determine the intent of the parties." *Houben*, 231 F.3d at 1072; *LaSalle Nat. Trust, N.A. v. ECM Motor Co.*, 76 F.3d 140, 144-45 (7th Cir. 1996) ("Where the terms of the contract are clear, the court must ascertain that intent solely from the language of the agreement. If, on the other hand, the court concludes that the contract is ambiguous, the resolution of the ambiguity becomes a question of fact, to be decided

by the trier of fact.") (citations omitted). Both sides have offered substantial evidence as to the intent of the exclusion language, which precludes us from entering summary judgment for either party.

Alternatively, NY Marine contends that the Panama City loss is excluded under a wear and tear exclusion that reads:

> It is also understood and agreed that [NY Marine] shall not be liable for direct or indirect physical loss or damage occasioned by or resulting from any of the following perils: Wear and Tear, Gradual Deterioration, Inherent Vice, Latent Defect or Rust or other Oxidation.

NY Marine Memo. at 4; Stone Opp. at 6. NY Marine argues that wear and tear and/or gradual deterioration caused Pulp Digester #15's walls to thin so much that the digester could not withstand normal operating pressures and exploded. While the asserted fact pattern may be true, NY Marine's interpretation of the wear and tear exclusion is ridiculous. The wear and tear exclusion does not apply to the catastrophic rupture and explosion that occurred at the Panama City plant. NY Marine even admits that the wear and tear exclusion is intended to exclude only repair and replacement costs of worn out machinery. In its 56.1 statement, Stone asserted that it is undisputed that "[t]he purpose of the standard wear and tear exclusions in an All-Risk policy is to remove from coverage the repair and replacement of property that deteriorates or has defects occurring over time." Stone 56.1 Statement ¶ 157 (admitted). NY Marine failed to respond to this assertion in a substantive way and requested that it be

"disregarded" as violative of Local Rule 56.1. We will not disregard it as it stated a material fact as to the purpose or intent of wear and tear exclusions. Thus, the fact is admitted. *See* Local Rule 56.1(b) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.").

B.     Stone versus Wausau, Navigators, and Hartford Fire

Wausau, Navigators, and Hartford Fire resist coverage for the Panama City loss under the same two types of exclusions as NY Marine (i.e. a boiler and machinery exclusion and a wear and tear exclusion). The only difference in their situation as oppose to NY Marine is that the language of the boiler and machinery exclusions is disputed.

At the time of the accident, Wausau, Navigators, and Hartford Fire had not yet issued policies. As a temporary memorialization of their yet to be issued policies, they issued insurance binders to Stone. Stone asserts that the boiler and machinery exclusion language that appears in the NY Marine policy should have also made its way into the policies issued by Wausau, Navigators, and Hartford Fire. Instead, Wausau, Navigators, and Hartford Fire ultimately issued policies containing only general boiler and machinery exclusions that do not reference the HSB policy. *See* Wausau 56.1 Statement ¶ 21 ("excluding California earthquake and Boiler and

Machinery perils."); Navigators 56.1 Statement ¶ 19 ("excluding California earthquake and Boiler and Machinery perils."); Hartford Memo. at 4 ("ALL RISK INCLUDING FLOOD & EARTHQUAKE, *EXCLUDING* CALIFORNIA QUAKE, *BOILER & MACHINERY* AND . . .").

Stone argues that Wausau, Navigators, and Hartford Fire should have issued policies that specifically excluded only direct physical loss or damage as defined in the HSB boiler and machinery policy rather than boiler and machinery perils generally. Although there is a disputed issue of fact as to the specific language that was or should have been employed, the issue is immaterial because Wausau, Navigators, and Hartford Fire constructively admit that their boiler and machinery exclusions, as written, are synonymous with Stone's purported version. First, since Wausau's, Navigators', and Hartford Fire's boiler and machinery exclusions don't reference a particular definition for boiler and machinery perils, we interpret them to employ the industry standard. Second, Wausau, Navigators, and Hartford Fire all admit that the HSB policy is "the most comprehensive standard B&M policy form and it provided the broadest available coverage in the market in 1993–1994." Stone 56.1 Statement ¶ 27 (admitted). Thus, if the Panama City loss was a boiler and machinery risk generally, it necessarily would be defined in the HSB policy since that policy is the broadest and most comprehensive boiler and machinery policy in the industry.

As stated above with respect to NY Marine, the term "as defined in the [HSB policy]" is ambiguous, and there is a disputed issue of material fact as to the intent of the exclusion. Summary judgment is therefore precluded with respect to Wausau, Navigators, and Hartford Fire just as it is with respect to NY Marine.

Alternatively, Wausau, Navigators, and Hartford Fire seek to exclude the Panama City loss under the wear and tear exclusions in their policies. Those exclusions employ the exact same language as NY Marine's wear and tear exclusion discussed above. *See* Wausau 56.1 Statement ¶ 23; Navigators Memo. at 9; Hartford Memo. at 9. Additionally, Wausau, Navigators, and Hartford Fire, like NY Marine, admit that "[t]he purpose of the standard wear and tear exclusions in an All-Risk policy is to remove from coverage the repair and replacement of property that deteriorates or has defects occurring over time." Stone 56.1 Statement ¶ 157 (admitted). The wear and tear exclusion does not apply to the catastrophic rupture and explosion that occurred at the Panama City plant.

C.     Stone versus Commonwealth

Commonwealth, like the other All-Risk Insurers, purports to exclude coverage for Stone's loss under a boiler and machinery exclusion in its policy. The boiler and machinery exclusion in Commonwealth's policy, however, is different than those employed by the other All-Risk Insurers. At the time of the accident, Commonwealth

had not yet issued a policy. As a temporary memorialization of its agreement to insure Stone, it issued an insurance binder. All the binder states with respect to boiler and machinery perils is "B&M Sub-Limit $20,000,000"—which both parties agree generally means that Commonwealth was not insuring boiler and machinery perils in excess of $20 million. Stone did not issue a final policy until nine months after the accident occurred and over a year after it issued the binder and attached coverage. The Commonwealth policy includes very specific language with respect to excluding boiler and machinery perils. The policy's boiler and machinery exclusion mirrors the specific language in section "A. COVERAGE", and only that section, of the HSB policy. It leaves no room for narrowing the definition of boiler and machinery peril for perils involving explosions. Thus, under the Commonwealth policy, as written, the Panama City loss is clearly excluded. Stone not dispute this. Instead, Stone argues that the policy exclusion was crafted after the accident with the specific objective to exclude the accident and that it is inconsistent with both the binder exclusion and the intent of parties.

Insurance binders are legally binding and meant as a temporary substitute for an insurance policy. *Zannini v. Reliance Ins. Co. of Illinois*, 590 N.E.2d 457, 464 (Ill. 1992) ("An insurance binder 'is in the nature of temporary insurance, and insurance coverage by its use is effected at once.'"). Neither party could unilaterally alter the

- 15 -

terms in the final policy from those agreed upon in the binder. Both parties acknowledge this.

Stone and Commonwealth entered into an insurance binder that both parties admit excluded boiler and machinery perils. The parties differ as to the definition of boiler and machinery peril. Commonwealth's definition is that which is encompassed by section "A. COVERAGE" of the HSB boiler and machinery policy. Stone's definition is that which is covered under the entire HSB boiler and machinery policy. We find the term susceptible to both interpretations, and therefore, ambiguous. *See City of Northlake*, 775 N.E.2d at 1021. Because the exclusion is ambiguous, resolution of its meaning depends on the intent of the parties, which is a question of fact. *Houben*, 231 F.3d at 1072. Stone and Commonwealth present substantial conflicting evidence as to the intent of "B&M Sub-Limit $20,000,000". Additionally, Stone relies on other ambiguous language in the binder that states "Form: - Broker's wording" to support its argument that its broker, RHH, and not Commonwealth, had the right to supply the actual wording. Commonwealth counters that in a fax to Stone, which Commonwealth claims to be part of the binder, Commonwealth stated "Final form subject to review and acceptance prior to attachment." Commonwealth further claims that Stone's representative responded to this fax with a fax of its own asking to bind coverage for Stone under the terms and conditions per the Commonwealth fax.

Because there is a genuine issue of disputed fact as to the meaning of "B&M Sub-Limit $20,000,000", we cannot determine whether the final policy's version comports with the binder. Summary judgment is denied as to both parties.

Commonwealth attempts to collaterally estop Stone from denying that the Panama City loss was a boiler and machinery loss based on the previous litigation in *Hartford I* and *Hartford II*. Collateral estoppel only bars litigation of the same issues that have already been litigated in a previous litigation. *Boomer v. AT & T Corp.*, 309 F.3d 404, 422 n.10 (7th Cir. 2002) ("[F]or collateral estoppel to bar subsequent litigation, among other things, the issue sought to be precluded must be the same as involved in the prior case."). *Hartford I* determined the loss to be an accident to an object. 936 F. Supp. 487 *rev'd on other grounds Hartford II*, 165 F.3d 1157. Neither *Hartford I* nor *Hartford II*, however, settled the issue of whether or not the loss was a boiler and machinery loss; the earlier litigation only settled the issue of whether the particular "accident to an object" at issue was covered under HSB's boiler and machinery policy in light of an explosion exclusion. *Hartford II*, 165 F.3d at 1159. Commonwealth assumes these issues are the same. *See Commonwealth* Memo. at 7 ("Stone is collaterally estopped from denying that the Panama City Incident was an accident to an object *and as such, a B&M loss*.") (emphasis added). The issues are not necessarily the same. Although, Stone is foreclosed from denying that the Panama City

loss was "an accident to an object," it is free to advance its case that the Panama City loss was not a boiler and machinery loss.

D.    Stone versus Industrial Risk Insurers

IRI, like the All-Risk Insurers, has refused to pay out any claims to Stone under its all-risk policy. At the time of the Panama City accident, IRI had not yet issued a policy to Stone. According to Stone, both IRI's Comprehensive All Risk ("C-AR") form and IRI's binder together provided coverage as of the date of the accident. Stone argues that, to the extent that the C-AR form excludes coverage for the Panama City accident, it is inconsistent with the binder declarations, which were also part of the controlling agreement between Stone and IRI as of the date of the accident. All Stone can muster in support of this interpretation is that the binder provided a "concept of coverage" that was "All Risk Coverage, excluding Boiler and Machinery." Stone Response to IRI 56.1 Statement ¶ 31.

Stone's argument fails for two reasons. First, Stone admits that the binder itself "expressly states that coverage is being provided by the Comprehensive All Risk Form (C-AR) . . . ." IRI 56.1 Statement ¶ 31 (admitted). Thus, the binder acknowledges that the C-AR form defines the coverage. Second, Stone's general "concept of coverage" for all risks excluding boiler and machinery perils cannot override clear and

unambiguous language that specifically excludes the type of accident that occurred at the Panama City plant. Exclusion H of the C-AR form states:

> Unless endorsed hereon, *this policy does not insure against*:
>
> . . .
>
> 2.     *rupture, bursting,* cracking, burning or bulging *of*: steam boilers including equipment attached to and forming a part thereof; steam turbines; steam engines; steam pipes interconnecting any of the foregoing; hot water boilers or other equipment for heating water; *pressure vessels,* including equipment attached to and forming a part thereof; or, gas turbines;
>
> . . .
>
> *nor does this policy insure against resulting damage* to property caused by such Occurrences . . ..

C-AR Form, Section II(H) (emphasis added). In *Hartford II*, the Court of Appeals held that a pulp digester is a "pressure vessel." 165 F.3d at 1160, 1161. The court also held that Pulp Digester #15 "exploded when a thin area of its steel shell *ruptured . . .*" and that Pulp Digester #15, "as a result of the *rupture* in its wall, blew up." 165 F.3d at 1159, 1160. The Seventh Circuit has already determined that the Panama City accident involved the rupture of a pressure vessel. As a matter of law, Section II(H) excludes coverage.

Stone contends that, even if the accident was caused by the rupture of a pressure vessel, the resulting damage is still not excluded. Stone invites us to read the policy

language, "nor does this policy insure against resulting damage to property caused by such Occurrences," to exclude only resulting damage *directly* caused by such Occurrences. From a factual standpoint, Stone maintains that the explosion (and not the rupture which facilitated the explosion) was the direct cause of the Panama City loss. This argument fails for three reasons. First, the language of section II(H) does not distinguish between direct and indirect resulting damage; it simply states "resulting damage". Second, section II(H) excludes damage caused by bursting of pressure vessels as well as rupture of pressure vessels. Pulp Digester #15 clearly burst (as well as exploded) when a thin area of its steel shell ruptured. Third, taking Stone's argument to its logical extreme, not even the explosion was the direct cause of damage; one could argue that the explosion indirectly caused the damage by hurling shrapnel through the plant, and that it was the flying shrapnel that directly caused damage as it smashed through other machinery, equipment, and building infrastructure.

Stone argues that, even if the Panama City accident is not covered under the IRI policy as issued, the policy should be reformed to include such coverage "to reflect the parties' intent that explosions such as Stone's loss [we]re covered events." Stone Opp. at 18. Reformation of a contract (including an insurance policy) is an equitable remedy performed by the court. *Board of Trustees of the Univ. of Illinois v. Ins. Corp. of Ireland*, 969 F.2d 329, 332 (7th Cir. 1992). Reformation "should only be allowed

when clear and convincing evidence compels the conclusion that the instrument as it stands does not properly reflect the true intention of the parties, and that there has been either a mutual mistake or a mistake by one party and fraud by the other." *Id* (quoting *Magnus v. Barrett*, 557 N.E.2d 252, 255 (Ill. App. Ct. 1990)). At trial, Stone would have "the burden of proving by very strong, clear and convincing evidence that: (1) there has been a meeting of the minds resulting in an actual agreement between the parties, (2) the parties agreed to reduce their agreement to writing, and (3) at the time that the agreement was reduced to writing and executed, some agreed upon provision was omitted or one not agreed upon was inserted either through mutual mistake or through mistake by one party and fraud by the other." *Klemp v. Hergott Group, Inc.*, 641 N.E.2d 957, 965 (Ill. App. Ct. 1994). No reasonable jury could find that any of these three elements occurred. Stone has not put forth any evidence that IRI ever agreed to provide coverage for ruptures of pressure vessels or, more generally, to provide seamless coverage to Stone in conjunction with the HSB policy. All Stone puts forth is its own intention to have all possible risks covered by either the IRI policy or the HSB policy. Furthermore, there is no evidence that anything was omitted from, or altered in, the final writing. The policy IRI issued included the C-AR form, which Stone admits IRI told them would be part of the policy. There is simply no evidence

that the policy IRI issued is inconsistent with any agreement IRI made with Stone or Stone's insurance broker during negotiations of the policy.

Stone asserts that, if the policy does not provide coverage for the pulp digester explosion, IRI violated the Illinois Consumer Fraud Act (the "ICFA") with respect to allegedly inconsistent representations made in IRI's 1983 Pulp and Paper Brochure. In order to establish a violation of the ICFA, Stone must show that 1) IRI engaged in a deceptive act or practice; 2) IRI intended that Stone rely on the deception; 3) the deception occurred in the course of conduct involving trade and commerce; and 4) Stone suffered actual damage. *See Williams v. Ford Motor Co.*, 192 F.R.D. 580, 584-85 (N.D. Ill. 2000) (citing 815 ILCS 505/2; 815 ILCS 505/10a(a)).

The brochure at issue states that "the major hazard involved is explosion resulting from vessel failure." Stone 56.1 Statement ¶ 27 (admitted). The brochure, however, does not state that such hazards are covered under any particular IRI policy and makes no mention of IRI's C-AR policy. Stone argues that "[n]owhere in the brochure does IRI inform its insureds that [vessel explosions] are only covered under a certain policy, and are excluded risks under other policies such as the C-AR Form issued to Stone." Stone Opp. at 24. This is an accurate statement but not the full story. Not only does the brochure make no representations that vessel explosions are only

covered under certain policies and not others, the brochure makes no representations of coverage whatsoever.

Although the IRI brochure does not make any express coverage representations, Stone maintains that it creates an expectation of coverage for the hazards it describes. Stone relies on *Dobosz v. State Farm Fire & Casualty Co.*, 458 N.E.2d 611 (Ill. App. Ct. 1983), for support. In *Dobosz*, the court did treat a brochure as part of the insurance contract between the parties, but the facts were much different than in the instant case. *Id* at 614. In *Dobosz*, a homeowner sued his insurer for water damage to his home. *Id* at 611. The insurer refused to pay, stating that the damage was excluded under the policy. *Id*. The homeowner argued that the insurer's brochure indicated that such water damage would be covered, and the court agreed, noting:

> When Dobosz contacted State Farm agent Paul Buchholz to inquire about obtaining homeowners' insurance, Buchholz sent Dobosz a copy of State Farm's brochure, indicating that it described the various types of coverage available. Buchholz recommended the "All-Risk" policy, said it was the "Cadillac of the line", told Dobosz that it would take a long time to explain the policy itself, and indicated that the brochure would show what the policy covered. Dobosz received the brochure, examined it, and instructed Buchholz to issue the insurance. Dobosz testified that he relied on the brochure to indicate the risks against which the home would be insured.

*Id* at 612-613. The facts of the instant case are not analogous. Stone is a large corporate insured that obtained insurance with the aid of RHH, a professional corporate insurance broker. The IRI brochure does not describe any types of available coverage,

much less the specific one at issue (C-AR). There are no allegations that IRI or any IRI agent told Stone or its insurance broker to look to the brochure instead of the policy or that the brochure showed what the policy covered.

The Panama City accident loss is excluded under the clear and unambiguous terms of the IRI policy, and there is no basis to reform the policy or to find that IRI violated the ICFA.

## CONCLUSION

Based on the foregoing analysis, we grant IRI's motion for summary judgment. All other pending motions are denied.

Charles P. Kocoras
Chief Judge
United States District Court

Dated: DEC 1 3 2002