# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8471 | **DATE** | 4/13/2004 |
| **CASE TITLE** | Commonwealth Ins Co. vs. Stone Container Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10)■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Commonwealth's motions #1 and # 11 (Docs 468-1 & 478-1) are granted as discussed in the above Memorandum Opinion. Its motions #9 and #10(Docs 476-1 & 477-1) are granted in part and denied in part also as discussed. Motions #2 - #4 (Docs 469-1, 470-1 & 471-1) and #6 - #8 (Docs 473-1, 474-1 & 475-1) are denied. Stone's motion (Doc 466-1) regarding a "wear and tear" defense is granted. Its motion(Doc 464-1) regarding a damages figure lower than that offered by Adjuster Ratcliff is denied. Its motion (Doc 467-1) to preclude evidence of deaths, injuries, lawsuits, or OSHA proceedings involving the Panama City incident is granted in part and denied in part as discussed. The court will entertain brief oral argument at time of trial on the remaining motions, namely Commonwealth's motion #5 (Doc 472-1) as well as Stone's motions regarding extrinsic evidence concerting the meaning of the damages provisions of the policies (Doc 465-1) and pertaining to expert testimony regarding "make-up" production under <u>Daubert</u> (Doc 463-1).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | U.S. DISTRICT COURT CLERK | APR ? 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | 500 |
| | Mail AO 450 form. | | 15 docketing deputy initials | |
| | Copy to judge/magistrate judge. | 2004 APR 13 AM 10: 33 | | |
| SCT | courtroom deputy's initials | FILED | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

COMMONWEALTH INSURANCE COMPANY; )
HARTFORD FIRE INSURANCE COMPANY; )
NAVIGATORS INSURANCE COMPANY; )
EMPLOYERS INSURANCE COMPANY OF )
WAUSAU; and NEW YORK MARINE AND )
GENERAL INSURANCE COMPANY, )
)
Plaintiffs and Counterclaim Defendants, )
)
vs. ) No. 99 C 8471
)
STONE CONTAINER CORPORATION, )
)
Defendant and Counterclaimant. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on the parties' motions in limine. Plaintiff Commonwealth Insurance Company ("Commonwealth") has filed 11 motions; Defendant Stone Container Corporation ("Stone") has filed five.

### BACKGROUND

Stone manufactures pulp, paper, and paper products. Part of the manufacturing process involves pulp digesters, which turn wood chips into pulp using chemicals, heat, and pressure. On April 13, 1994, a pulp digester exploded in Stone's plant in Panama City, Florida, killing several employees and causing an alleged $84 million of damage.



Stone had obtained insurance for the calendar year 1994 with the aid of a professional corporate insurance broker, Rollins Hudig Hall of Illinois, Inc. (now Aon Risk Services, Inc. of Illinois ("Aon")). Stone ultimately obtained a patchwork of insurance coverage for the 1994 year that was split among different insurers, at different layers of coverage, and between different types of insurance. For the first $20 million of damage, Stone was covered for all risks including boiler and machinery risks. Stone has received the full proceeds under these policies. For damages in excess of $20 million, coverage was split between boiler and machinery insurance provided by Hartford Steam Boiler Inspection and Insurance Company ("HSB") and all-risk insurance, excluding boiler and machinery risks, provided by several insurers including Commonwealth.

In February 1995 Commonwealth, along with several of Stone's other insurers, filed an action seeking a declaratory judgment that their policies did not cover Stone's losses incurred at the Panama City plant. This suit was dismissed without prejudice so Stone could pursue an action solely against HSB (the boiler and machinery insurer for damages in excess of $20 million). Stone obtained summary judgment against HSB at the trial level but lost on a reversal by the Court of Appeals. Stone Container Corp. v. Hartford Steam Boiler Inspection and Ins., 165 F.3d 1157 (7th Cir. 1999) (Stone II)

rev'g Stone Container Corp. v. Hartford Steam Boiler Inspection and Ins., 936 F. Supp. 487 (N.D. Ill. 1996) (Stone I).

After the Seventh Circuit decided Stone II, Commonwealth and Stone's other insurers renewed their declaratory judgment action against Stone. Stone filed counterclaims as well as third-party claims against Aon and another party. After ensuing motions for summary judgment and settlements, only Commonwealth and Stone remain.

At the time of the accident, Commonwealth had not yet issued a policy. As a temporary memorialization of its agreement to insure Stone, it issued an insurance binder. All the binder stated with respect to boiler and machinery perils was "B&M Sub-Limit $20,000,000." In deciding the most recent motion for summary judgment, we determined this language to be ambiguous, necessitating a trial to determine what the parties actually intended in entering the insurance agreement. The parties have filed a final pretrial order, which includes several motions in limine.

## LEGAL STANDARD

The power to exclude evidence pursuant to motions in limine is part and parcel of a district court's authority to manage trials. Falk v. Kimberly Servs., 1997 WL 201568, *1 (N.D. Ill. Apr. 16, 1997). Motions in limine should be granted only when the evidence under attack is clearly inadmissible on all potential grounds. Hawthorne

Partners v. A.T. & T. Technologies, Inc., 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). The admissibility of some proposed evidence cannot be determined without a proper frame of reference, and motions in limine pertaining to such evidence should be denied. See Tzoumis v. Tempel Steel Co., 168 F. Supp. 2d 871, 873 (N.D. Ill. 2001). Of course, such a denial does not mandate that the subject evidence be admitted at trial; rather, it allows the court to address pertinent questions of admissibility within a proper context. Hawthorne Partners, 831 F. Supp. at 1400-01. Moreover, a district court can alter a previous ruling on a motion in limine. Luce v. U.S., 49 U.S. 38, 41-42, 105 S. Ct. 460 (1984). With these principles in mind, we address the motions before us.

## DISCUSSION

### A. Commonwealth's Motions

*1. Motion #1: Testimony Regarding Bodily Injuries and Deaths*

Commonwealth moves to omit from the trial any evidence of the injuries and deaths caused in the Panama City incident. They correctly point out that this evidence is immaterial to any of the issues remaining in this case. Stone agrees with this characterization. Accordingly, Commonwealth's Motion #1 is granted.

*2. Motion #2: Expert Testimony Regarding the Cause or Characterization of the Panama City Incident*

In its second motion, Commonwealth in essence argues that Stone and its experts are limited to discussing the Panama City incident in terms used in previous

court decisions in this case, namely an "accident to an object" caused by a "rupture." However, their reading of prior rulings is too narrow. Although this court and the Seventh Circuit have applied these descriptors to the underlying events, there is no corresponding indication that those are the only available characterizations. For example, Commonwealth interprets this Court's recognition of the Seventh Circuit's determination that the Panama City incident <u>involved</u> the rupture of a pressure vessel as an unequivocal statement that the <u>sole</u> cause of the incident was a rupture. Their other arguments similarly imbue meaning into earlier rulings that is simply not present in the actual language. Clearly, Stone cannot relitigate the application of terms such as "rupture" and "accident to an object," but evidence of what caused the rupture or accident is relevant and not foreclosed as Commonwealth argues. Thus, Commonwealth's Motion #2 is denied.

*3. Motion #3: Testimony Regarding Stone's Understanding or Expectations*

The third motion in limine filed by Commonwealth pertains to any testimony or evidence regarding Stone's understanding or expectations of the insurance coverage Aon brokered, the insurance binder Commonwealth issued before the policy, or a policy provision they refer to as the "Short Form Policy Wording." They argue that because Stone procured coverage through a broker and consequently did not directly

participate in the policy negotiations, none of Stone's employees can offer competent testimony.

Commonwealth insists that under Illinois law, Stone's expectations do not factor into a determination of coverage. However, the two cases cited for this proposition are distinguishable. Both involved policy provisions found to be unambiguous, and the courts refused to superimpose one party's professed expectation in the absence of an ambiguity. Gen'l Ins. Co. v. Robert B. McManus, Inc., 650 N.E.2d 1080, 1084 (Ill. App. Ct. 1995); Ins. Co. of North America v. Adkisson, 459 N.E.2d 310, 313 (Ill. App. Ct. 1984).[1] By contrast, the main focus in this case is the ambiguous term "B&M Sub-Limit $20,000,000." The jury must determine what the parties intended by that phrase, and their respective expectations and understanding are clearly relevant to that issue. Even if that was not the case, the motion is painted with such a broad brush that it would be impossible to state that nothing within its ambit could be admissible. Motion #3 is denied.

*4. Motion #4: Testimony about Other Insurers*

Commonwealth's fourth motion in limine is designed to preclude Stone from eliciting information about statements made to its other insurers during coverage

---

[1] Moreover, in Adkisson, the person arguing the relevance of expectations of coverage was not even a party to the policy in question, making those expectations doubly irrelevant.

negotiations; other insurers' acceptance or rejection of policy terms; adjustments, settlements, or payments by other insurers; or the outcome of Stone's earlier suit against Hartford Steam Boiler. Like Motion #3, this request is very broad. None of the rules of evidence to which Commonwealth refers are absolute bans on whole categories of evidence for any purpose. We reiterate that this case involves an ambiguous policy term, which opens the door to many types of evidence that would otherwise be impermissible. Without a proper frame of reference, we cannot assess the propriety of each component of the classes of information Commonwealth has identified. Consequently, the motion is denied without prejudice to representment at trial with respect to particular evidence.

5. *Motion #5: Testimony Regarding the Procurement and Terms of the HSB and London Excess Policies*

The court will entertain brief oral argument on Commonwealth's fifth motion in limine at time of trial.

6. *Motion #6: Testimony on Aon's Proposed Wording for a Boiler & Machinery Exclusion*

Commonwealth's sixth motion in limine attempts to force Stone to define its coverage in harmony with the Industrial Risk Insurers' Boiler & Machinery Exclusion. Failing that, the motion requests that Stone be prevented from arguing that the applicable exclusion clause is contained within ¶ 11 of the London Excess Policies.

As stated above, the main question to be addressed at trial is the meaning of the phrase "B&M Sub-Limit $20,000,000." In essence, this motion asks us to wholly or partially resolve the ambiguity at the heart of this case in a factual vacuum as a matter of law, which we cannot do. Accordingly, motion #6 is denied.

*7. Motion #7: Testimony Regarding Draft Policies Prepared by Craig Hurford in October 1994*

The seventh motion in limine filed by Commonwealth attempts to preclude any evidence of wording drafted by Commonwealth employees for Stone but not ultimately sent to Stone or used within the policy. The arguments advanced within the motion, such as internal rejection of proposed wording and the drafters' lack of adequate knowledge of the history of the parties' interactions, go to the weight that should be afforded this evidence, not its admissibility. As Stone points out, the evidence at issue in this motion is probative of Commonwealth's understanding of the terms within the binder. Motion #7 is denied.

*8. Motion #8: Testimony of J.L. Sullivan*

The eighth of Commonwealth's motions focuses on the testimony of J.L. Sullivan, whom Stone has identified as an expert on the issue of insurance coverage. None of the arguments is availing First, we disagree with Commonwealth's contention that Sullivan does not have sufficient qualifications to offer reliable testimony on the

opinions within his report. Second, the assertion that this Court's previous findings preclude Sullivan's proposed testimony suffers from the same problems noted in the discussion of Motion #2. This characterization is misleading in that it implies that this Court or the Seventh Circuit has definitively established the exclusive cause of the accident in Panama City; as discussed earlier, this is simply not the case. Third, the statement that Sullivan's testimony encroaches upon areas reserved solely for the court's decision is incorrect; our determination that there is ambiguity within the parties' agreement transforms the construction of the contested terms from a question of law into a question of fact. Douglas v. Allied American Ins., 727 N.E.2d 376, 379 (Ill. App. Ct. 2000). Introduction of evidence on the meaning of the terms is therefore appropriate. Commonwealth's final sticking point, Sullivan's failure to make a determination about the cause of the loss, is easily addressed with effective cross-examination. Accordingly, a wholesale elimination of Sullivan's testimony is unnecessary and unwarranted, and Motion #8 is denied.

9. *Motion #9: Testimony of Robert Paterson*

The ninth motion in limine filed by Commonwealth challenges the testimony of Robert Paterson on four grounds. Grounds three and four seek to restrict Paterson's testimony to the topics he was willing to discuss in his deposition. To this extent, the motion is granted. However, the first two grounds, centering on agreements and

valuations performed in connection with the claims of other insurers and Paterson's claimed reliance thereon in forming an opinion as to contested damage amounts, are challenges to the probative value of Paterson's opinion, not bars to its admissibility. As such, the motion is denied with respect to these two grounds.

*10. Motion #10: Testimony of Peter Kensicki and Roger Faulk*

Motion #10 attacks Stone's ability to present testimony from Peter Kensicki and Roger Faulk. The motion contends that these two witnesses will present expert testimony but that they were not disclosed as expert witnesses for Stone. Stone responds that Kensicki was disclosed as an expert for Aon, he filed a timely report, he was fully deposed on the contents of that report, and they notified Commonwealth that Aon's experts might be called as experts for Stone. As such, we can see no hindrance to Commonwealth's ability to effectively address Kensicki as a witness or any unfairness that would result to Commonwealth in allowing Kensicki to testify.

With respect to Faulk, Stone implicitly acknowledges that he was not identified as an expert witness. Stone argues that Faulk is nonetheless acceptable because they intend to present him as a fact witness, who would not be subject to the rules of expert disclosure. The testimony Stone proposes to elicit from Faulk involves the areas of boiler and machinery and all-risk insurance coverage. They claim that he is a fact witness in these areas because he served on a committee that drafted standard policy

forms used in the insurance industry. Despite Faulk's committee experience, it is apparent even from the limited presentation Stone has made that Faulk will be giving testimony in an area of specialized knowledge. The value of his testimony to the jury does not come from his five senses; it comes from his extensive background in the insurance industry. Stone's recharacterization notwithstanding, we agree with Commonwealth that Faulk would serve as an expert witness. Because he was not properly disclosed as an expert, he cannot be permitted to testify. Motion #10 is therefore denied as to Kensicki and granted as to Faulk.

*11. Motion #11: Testimony on Stone's Claims for Interest and Attorneys' Fees*

Commonwealth's eleventh motion seeks to bar Stone from presenting to the jury its claims for prejudgment interest under 815 ILCS 205/2 and for attorneys' fees under 215 ILCS 5/155. Controlling case law from this circuit makes clear that the court, not the jury, determines a party's entitlement to these remedies. See Dallis v. Don Cunningham & Assocs., 11 F.3d 713, 718 (7th Cir. 1993) (prejudgment interest pursuant to 815 ILCS 205/2); Horning Wire Corp. v. Home Indemnity Co., 8 F.3d 587, 590 (7th Cir. 1993) (attorneys' fees under 215 ILCS 5/155). Thus, it is both unnecessary and improper for Stone to present evidence in support of their claims to these amounts to the jury, and the motion is granted to that extent. Correspondingly, consideration of other issues raised in Commonwealth's motion, such as the time at

which interest could be deemed to begin to accumulate and limitations on recovery of attorneys' fees is unwarranted at this time. However, this ruling does not hinder Stone's ability to present its claims to this court (and Commonwealth to advance responsive arguments) at such a time as may become appropriate.

**B. Stone's Motions**

*1. Assertion of "Wear and Tear" as a Defense to Coverage*

Stone moves to prevent Commonwealth from offering evidence in support of a defense of a "wear and tear" exclusion to coverage in this case. As Stone correctly notes, we decided that this exclusion did not apply to this case in an earlier summary judgment motion. While this statement was not specifically directed toward Commonwealth, it applies to their contentions as much as it did to Stone's other insurers. Thus, this motion is granted.

*2. Deaths or Injuries, Lawsuits, or OSHA Proceedings Involving the Panama City Incident*

This motion is the companion to Commonwealth's Motion #1. To the extent that it addresses the deaths and injuries stemming from the Panama City incident and the existence of lawsuits pending out of the same, it is granted. However, with respect to evidence pertinent to those lawsuits that has applicability to the instant suit, it is denied. It is also denied with respect to the OSHA proceedings referenced in the

motion, as these may bear upon investigations into the cause of the accident or other relevant information.

*3. Extrinsic Evidence Concerning the Meaning of the Damages Provisions of the Policies*

The court will entertain brief oral argument on this motion at time of trial.

*4. Assertion of a Damages Figure Lower than that Offered by Adjuster Drake Ratcliff*

This motion focuses on Commonwealth's damages expert, Steven Rosenthal. Stone contends that any testimony Rosenthal could offer about their damages has already been preempted by the figure calculated by adjuster Drake Ratcliff. They base this argument on the premise that Ratcliff had apparent authority to bind Commonwealth to an ultimate number. Commonwealth disputes this idea. Having reviewed the evidence Stone contends leaves "no doubt" that Ratcliff had apparent authority, we conclude that it is exceedingly thin and in no way justifies complete elimination of Rosenthal's ability to testify about the extent of Stone's damages. Accordingly, this motion is denied.

*5. Expert Testimony Regarding "Make-Up" Production Under <u>Daubert v. Merrell Dow Pharmaceuticals</u>*

The court will entertain brief oral argument on this motion at time of trial. However, it is necessary to draw attention to the sweeping, offhand comment in ¶ 13 of Commonwealth's response that "<u>Daubert</u> does not apply to accountants." It is true

that the putative expert in Daubert was not an accountant. But the notion that the teaching of Daubert with respect to the application of Fed. R. Evid. 702 is limited to experts in the "hard sciences" or that this court's gatekeeping function in assessing expert testimony is somehow relaxed when it comes to accountants flies in the face of controlling precedent. See, e.g., Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 149, 119 S. Ct. 1167, 1175 (1999). Not only does Commonwealth misstate the law, it completely misses the point of the discussion in the case it cites to support its position, namely, that an putative expert does not have to have a particular academic pedigree to be competent to offer expert testimony. Tuf Racing Products, Inc. v. Am. Suzuki Motor Corp., 223 F.3d 585, 591 (7th Cir. 2000).

## CONCLUSION

Based on the foregoing analysis, Commonwealth's motions #1 and #11 are granted as discussed in the above Memorandum Opinion. Its motions #9 and #10 are granted in part and denied in part also as discussed. Motions #2–#4 and #6–#8 are denied. Stone's motion regarding a "wear and tear" defense is granted. Its motion regarding a damages figure lower than that offered by Adjuster Ratcliff is denied. Its motion to preclude evidence of deaths, injuries, lawsuits, or OSHA proceedings involving the Panama City incident is granted in part and denied in part as discussed. The court will entertain brief oral argument at time of trial on the remaining motions,

namely Commonwealth's motion #5 as well as Stone's motions regarding extrinsic evidence concerning the meaning of the damages provisions of the policies and pertaining to expert testimony regarding "make-up" production under Daubert.

/s/ Charles P. Kocoras
Charles P. Kocoras
Chief Judge
United States District Court

Dated: APR 1 3 2004